IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEFANIE L. GUBERA,<br><br>  Plaintiff,<br><br>v.<br><br>LLOYD J. AUSTIN III, in his official capacity as United States Secretary of Defense,<br><br>CHRISTINE WORMUTH, in her official capacity as United States Secretary of the Army,<br><br>and<br><br>ARMY BOARD FOR CORRECTION OF MILITARY RECORDS,<br><br>  Defendants. | Case No. 1:21-CV-1425 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.  Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202, Plaintiff Stefanie L. Gubera ("Ms. Gubera") brings this action for declaratory and injunctive relief against Lloyd Austin, in his official capacity as United States Secretary of Defense, Christine Wormuth, in her official capacity as United States Secretary of the Army, and the Army Board for Correction of Military Records ("ABCMR") (collectively, "Defendants") to challenge the findings of the ABCMR in Docket No. AR20200005532.

2.  In 2020, Ms. Gubera, a decorated military veteran, applied to the ABCMR to upgrade her characterization of service from "Under Honorable Conditions (General)" to "Honorable" ("Ms. Gubera's Request"). Although the Army Review Board Agency medical

1

advisor recommended to the ABCMR that Ms. Gubera's Request be approved based on service-connected Post-Traumatic Stress Disorder ("PTSD") related to military sexual trauma ("MST") (the "ARBA Recommendation"), the ABCMR nevertheless erroneously denied Ms. Gubera's Request on April 21, 2021 (the "ABCMR Denial"). This suit seeks judicial review of the ABCMR Denial.

3. ABCMR decisions regarding characterization of service upgrade requests are final agency actions and are "subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also* 5 U.S.C. § 706(2).

4. The ABCMR Denial is arbitrary and capricious because it fails to properly apply the liberal consideration due to Ms. Gubera's VA rating decision, issued on January 3, 2020 (the "VA Rating"), and to Ms. Gubera's Request. Further, the ABCMR Denial is arbitrary and capricious because it fails to address why it disregarded the ARBA Recommendation that Ms. Gubera's Request be granted.

5. Ms. Gubera accordingly requests this Court (i) declare the ABCMR Denial was arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law, (ii) vacate the ABCMR Denial, and (iii) remand this matter to the ABCMR for further consideration of Ms. Gubera's Request.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises federal questions under the APA, 5 U.S.C. § 701 *et seq*. Ms. Gubera also seeks relief under the Declaratory Judgement Act, 28 U.S.C. §§ 2201, 2202.

7. The Court has authority to issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Rule 57 of the Federal Rules of Civil Procedure.

8. The Court has authority to grant injunctive relief pursuant to 5 U.S.C. §§ 702 and 706, and Rule 65 of the Federal Rules of Civil Procedure.

9. The ABCMR Denial, upon confirmation by the Secretary of the Army, became a final agency action for which there is no other adequate remedy in a court. *See* 5 U.S.C. § 704; 10 U.S.C. § 1552(4)–(5).

10. Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because multiple Defendants are headquartered in Washington, D.C. Venue is also proper under 5 U.S.C. § 703 because this Court is a court of competent jurisdiction.

11. The ABCMR Denial was issued April 21, 2022. In accordance with 28 U.S.C. § 2501, this action is brought within six years of the ABCMR Denial and the Army's final decision to deny Ms. Gubera relief.

## PARTIES

12. Plaintiff Stefanie L. Gubera, also known as Stefanie L. Blood, is a citizen of the United States, a decorated veteran of the United States Army, and a resident of Sacramento, California.

13. Defendant Lloyd J. Austin III is sued in his capacity as the United States Secretary of Defense. In his role as the Secretary of Defense, he is the chief officer of the Department of the Defense and exercises authority, direction, and control over the Department of Defense and, resultingly, the Department of the Army and the ABCMR. Upon information and belief, Defendant Austin performs a significant amount of his official duties within this judicial district, at 1000 Defense Pentagon, Washington, DC 20301-1000.

14. Defendant Christine Wormuth is sued in her capacity as the United States Secretary of the Army. In her role as the Secretary of the Army, she is the chief officer of the Department of the Army and exercises authority, direction, and control over the Department of the Army and, resultingly, the ABCMR. Upon information and belief, Defendant Wormuth performs a significant amount of her official duties within this judicial district, at 101 Army Pentagon, Washington, DC 20310-0101.

15. Defendant ABCMR is an administrative review board for the Department of the Army. Defendant ABCMR's stated mission is to correct errors in or remove injustices from U.S. Army military records. Upon information and belief, Defendant ABCMR is located at 251 18th Street South, Suite 385, Arlington VA 22202-3531.

## STATUTORY AND REGULATORY BACKGROUND

16. Federal law permits the Secretary of the Army to "correct any [Army] military record… when the Secretary considers it necessary to correct an error or remove an injustice." *See* 10 U.S.C. § 1552(a)(1).

17. These corrections "shall be made by the Secretary acting through boards of civilians of the executive part" of the Army. *Id.*

18. Pursuant to 10 U.S.C. § 1552, the Army established the ABCMR and policies and procedures for the correction of military records. *See* 32 C.F.R. § 581.3.

19. The Secretary of the Army may act through the ABCMR to amend a military record as necessary to "correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *id* § 581.3(a)(1). This may include upgrading a veteran's characterization of service.

20. Applicants must file an application for a correction of records with the ABCMR "within 3 years after the alleged error or injustice is discovered or reasonably should have been

discovered." 32 C.F.R. § 581.3(d)(2). However, the ABCMR may waive this timely filing requirement "in the interest of justice." *Id.*

21. The ABCMR reviews each case for whether "the preponderance of the evidence shows that an error or injustice exists." *Id.* § 581.3(b)(4), (e)(2).

22. ABCMR reviews consist of a three-member panel, and decisions are made by a majority vote of the panel. *Id.* §§ 581.3(e)(3), (g)(1).

23. The Secretary of Defense issued guidance on September 3, 2014, titled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder." *See* Memorandum from Chuck Hagel, Secretary of Defense, to Secretaries of the Military Departments (Sept. 3, 2014) (https://www.secnav.navy.mil/mra/bcnr/Documents/HagelMemo.pdf) ("Hagel Guidance").[1]

24. The Hagel Guidance instructs that "[l]iberal consideration will be given in petitions for changes in characterization of service to Service treatment record entries which document one or more symptoms which meet the diagnostic criteria of [PTSD] or related conditions." Hagel Guidance Attach. at 1.

25. The Hagel Guidance instructs that "[s]pecial consideration will be given to Department of Veterans Affairs (VA) determinations which document PTSD or PTSD-related conditions connected to military service," and that, "[i]n cases in which PTSD or PTSD-related

---

[1] While the Hagel Guidance initially covered only requests for upgrades of a characterization of service of "under other than honorable conditions," the Kurta Guidance extended the Hagel Guidance to also cover requests for upgrades for "under honorable conditions (general)" characterizations. *See* Memorandum from Anthony M. Kurta, Acting Under Secretary of Defense for Personnel and Readiness, to Secretaries of the Military Departments (Aug. 25, 2017) Attach. at 3 (https://dod.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf).

conditions may be reasonably determined to have existed at the time of discharge, those conditions will be considered potential mitigating factors in the misconduct that caused the other than honorable conditions characterization of service." *Id.*

26. The Hagel Guidance further states that the ABCMR "may obtain advisory opinions from Department of Defense mental health care professionals or otherwise use Department of Defense mental health care professionals or physicians in their consideration of cases to advise them on assessing the presence of PTSD and its potentially mitigating effects relating to the misconduct that formed the basis for the under other than honorable characterization of service." *Id* at 2.

27. The Acting Under Secretary of Defense for Personnel and Readiness issued additional guidance on August 25, 2017, titled "Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment." *See* Memorandum from Anthony M. Kurta, Acting Under Secretary of Defense for Personnel and Readiness, to Secretaries of the Military Departments (Aug. 25, 2017) (https://dod.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf) ("Kurta Guidance").

28. The Kurta Guidance instructs that "[l]iberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD; [traumatic brain injury ("TBI")]; sexual assault; or sexual harassment." Kurta Guidance Attach. at 1.

29. The Kurta Guidance instructs that service members diagnosed with mental health conditions or who reported sexual assault receive heightened screening "to ensure the causal

relationship of possible symptoms and discharge is fully considered, and characterization of service is appropriate." *Id.* at 4.

30. The Kurta Guidance instructs that evidence of sexual assault may include "[Department of Defense records], law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, physicians, pregnancy tests, tests for sexually transmitted diseases, and [personal] statements. . . ." *Id.* at 1.

31. The Kurta Guidance instructs that evidence of a mental health condition may include: "changes in behavior; …deterioration in work performance; inability of the individual to conform their behavior to the expectations of a military environment; substance abuse; [and] episodes of depression, panic attacks, or anxiety without an identifiable cause." *Id.*

32. Further, "[a] veteran's testimony alone, oral or written, may establish the existence of a condition or experience…." *Id.* at 2.

33. The Kurta Guidance also instructs that "[e]vidence of misconduct, *including any misconduct underlying a veteran's discharge*, may be evidence of a mental health condition." *Id* at 1 (emphasis added).

34. The Kurta Guidance requires the ABCMR to consider whether "the [mental health] condition or experience excuses or mitigates the discharge," and states that conditions that existed at the time of discharge "will be liberally considered as excusing or mitigating the discharge." *Id.* at 2.

35. The Kurta Guidance instructs that liberal consideration be given to a diagnosis by a licensed psychiatrist or psychologist. *Id.* It also instructs that VA determinations be considered as "persuasive evidence that the [mental health] condition existed or experience occurred during military service." *Id.*

36. The Kurta Guidance states that liberal consideration covers, among other things, the concept that PTSD and MST "inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected." *Id.* at 4.

37. The Kurta Guidance further instructs that "[a]n Honorable discharge characterization does not require flawless military service. Many veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct." *Id.*

38. Decisions by the ABCMR constitute final agency actions. *See* 10 U.S.C. § 1552(a)(4)–(5); 32 C.F.R. § 581.3(g)(2).

39. Servicemembers may request the ABCMR reconsider its decision if there is new evidence that was not previously in the record that sufficiently demonstrates a "material error or injustice." *See* 32 C.F.R. § 581.3(g)(4)(i).

40. Absent new evidence, a servicemember's only available remedy, following an ABCMR decision, is to "appeal to a court of appropriate jurisdiction." *Id.* § 581.3(g)(4)(ii).

## FACTUAL ALLEGATIONS

### A. Ms. Gubera's Service in the Army

41. Ms. Gubera enlisted in the Regular Component of the Army on February 24, 2004.

42. During her service in the Army, Ms. Gubera reached the rank of Specialist (E-4), and her primary specialty was Healthcare Specialist. Ms. Gubera received numerous decorations, including: the National Defense Service Medal, the Global War on Terrorism Service Medal, the Korea Defense Service Medal, and the Army Service Ribbon.

43. Ms. Gubera's military records reflect honorable service. Further, Ms. Gubera received letters of recommendation and laudatory comments from academic staff, coworkers, and patients while in the Army.

44. Ms. Gubera was deployed to South Korea in December 2005. Ms. Gubera was stationed in South Korea from December 2005 to May 2006 at Camp Casey and Camp Coiner.

45. In December 2005, while stationed at Camp Casey, Ms. Gubera was sexually assaulted by another US military servicemember.

46. Ms. Gubera became pregnant with a daughter as a result of the sexual assault.

47. Ms. Gubera returned to the United States and was stationed at Fort Bliss, Texas, in May 2006, where she gave birth to her daughter in September 2006. Ms. Gubera returned to duty postpartum in October 2006.

**B.     Ms. Gubera's Discharge from the Army**

48. Ms. Gubera was scheduled for a 6-month deployment to Iraq following the birth of her daughter and her return to duty.

49. Ms. Gubera was informed that she was required to provide a family care plan, pursuant to Army Regulation 600-20 ¶ 5-5.[2] A family care plan is a document "by which [s]oldiers will provide for the care of their family members when military duties prevent the [s]oldier from doing so," such as when soldiers are deployed. Army Regulation 600-20 ¶ 5-5.

50. Ms. Gubera received initial family care plan counseling on October 6, 2006, during which Ms. Gubera and Ms. Gubera's commanding officer, Captain Jason Ling ("CPT Ling"), completed a Family Care Plan Counseling Checklist (DA Form 5304-R).

51. Ms. Gubera was unable to provide the Army with a family care plan within the 30-day timeframe allotted by the Army.

---

[2]   Citations to Army Regulations refer to the Army Regulations in effect as-of the time of Ms. Gubera's service and discharge from the Army, in December 2006.

9

52. On November 3, 2006, CPT Ling, Commander, B Company, 31st Combat Support Hospital, 31st Air Defense Artillery Brigade, Fort Bliss, Texas, initiated proceedings to discharge Ms. Gubera from the Army.

53. CPT Ling cited Ms. Gubera's inability to provide a family care plan as the reason for initiating Ms. Gubera's discharge proceedings, under Army Regulation 635-200 ¶ 5-8, Involuntary Separation Due to Parenthood.

54. CPT Ling recommended Ms. Gubera be discharged with her term of service characterized as "Honorable Conditions."

55. CPT Ling's superior officer, Colonel Roberto Nang, Commander, 31st Air Defense Artillery Brigade, Fort Bliss, Texas ("COL Nang"), recommended Ms. Gubera be discharged with her term of service characterized as "Honorable."

56. Despite Ms. Gubera's prior service record, Colonel Christopher Putko, Commander, U.S. Army Air Defense Artillery Center and Fort Bliss, directed that Ms. Gubera be discharged from the Army with her term of service characterized as "Under Honorable Conditions (General)."

57. Ms. Gubera was discharged from the Army on December 20, 2006. On her Certificate of Release or Discharge from Active Duty (DD Form 214), the reason for Ms. Gubera's discharge is listed as "Parenthood," and Ms. Gubera's term of service is characterized as "Under Honorable Conditions (General)."

C. **Ms. Gubera's Post-Military Activities**

58. Since 2006, Ms. Gubera has raised her daughter.

59. After her discharge from the Army, Ms. Gubera worked as a licensed vocational nurse for 10 years. During this time, Ms. Gubera worked towards earning a bachelor's degree to become a registered nurse.

### D.    Ms. Gubera's Mental Health Conditions

60.    In 2006, following her experience with MST and her discharge from the Army, Ms. Gubera experienced her first panic attack, at age 22, with additional panic attacks occurring from 2006 to 2012.

61.    During a doctor's visit in July 2017, Ms. Gubera was assessed for mood disorders, anxiety disorders, thought disorders, and eating disorders. Ms. Gubera was diagnosed with PTSD.

62.    On January 3, 2020, the VA issued a VA Rating, stating that the "[s]ervice connection for [Ms. Gubera's] post traumatic stress disorder (PTSD) with unspecified depressive disorder and opiate dependence has been established as directly related to military service." The VA Rating Decision granted Ms. Gubera a 30 percent disability rating due to PTSD related to MST.

### E.    Ms. Gubera's Application for Characterization of Service Upgrade

63.    In early 2020, Ms. Gubera filed a Request with the ABCMR pro se, requesting her characterization of service be upgraded from "Under Honorable Conditions (General)" to "Honorable."

64.    Proceedings before the ABCMR regarding Ms. Gubera's case occurred on April 6, 2021, before a 3-person panel.

65.    In support of Ms. Gubera's Request, Ms. Gubera provided the ABCMR with numerous documents, including proof of her meritorious service in the Army, proceedings relating to her discharge, and the VA Rating finding that Ms. Gubera had service-connected PSTD related to MST.

66. The Army Review Board Agency medical advisor reviewed Ms. Gubera's record and issued the ARBA Recommendation, which recommended that Ms. Gubera's Request be approved, based on "liberal consideration, and service connected PTSD related to MST."

67. The ABCMR voted 2 to 1 to reject Ms. Gubera's Request. One member of the ABCMR panel voted in favor of granting Ms. Gubera full relief. Two members of the ABCMR panel voted against granting Ms. Gubera's petition, voting to deny relief.

68. On April 9, 2021, the ABCMR Chairperson for Ms. Gubera's case, Tina Harris, certified the ABCMR's determination that Ms. Gubera's case "[did] not demonstrate the existence of a probable error or injustice."

69. The ABCMR Denial cites the following references regarding its decision: 10 U.S.C. § 1552(b); Army Reg. 600-20; Army Reg. 635-200; the Kurta Guidance; and guidance issued by the Office of the Undersecretary of Defense for Personnel and Readiness on July 25, 2018.

70. The ABCMR Denial does not cite the Hagel Guidance.

71. The ABCMR Denial includes only three sentences regarding the discussion of its decision.

72. The ABCMR Denial's discussion states only: "After reviewing the application and all supporting documents, to include the DoD guidance on liberal consideration when reviewing discharge upgrade requests, the Board determined relief was not warranted. One potential outcome discussed was to grant a discharge upgrade based upon the medical advisor findings and recommendations, as well as the facts and circumstances related to the applicant's separation. However, based upon the lack of evidence showing why the applicant failed to retain a family care plan, the Board recommended denying relief."

73. In the discussion of its decision, the ABCMR Denial makes no reference to Ms. Gubera's MST, the VA Rating Decision, or the ARBA Recommendation, and fails to address why it rejected the ARBA Recommendation.

74. The ABCMR Denial does not explain how the panel weighed the circumstances surrounding Ms. Gubera's discharge against her PTSD related to MST.

75. The ABCMR Denial fails to discuss Ms. Gubera's MST and how it resulted in her discharge.

76. The ABCMR Denial fails to discuss the impact of Ms. Gubera's PTSD related to MST and how it caused her to behave differently than expected and resulted in her discharge.

77. The ABCMR Denial includes no discussion of why the members of the panel differed in the recommendations for which they voted.

78. The ABCMR Denial cites simply "the lack of evidence showing why the applicant failed to retain a family care plan" as its rationale for denying relief.

## COUNT I

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)

79. Plaintiff realleges and incorporates the allegations of all the preceding paragraphs.

80. The APA provides that a reviewing court "shall … hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

81. "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)

("*State Farm*"). The explanation must be such that the path between the facts and the agency decision "may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

82. If an agency fails to provide "a rational connection between the facts found and the choice made," the action is arbitrary and capricious and, therefore, unlawful. *Encino Motorcars*, 579 U.S. at 221 (citing 5 U.S.C. § 706(2)(A); *State Farm*, 463 U.S. at 43).

83. The ABCMR Denial constitutes a violation of the APA because it is arbitrary and capricious and not in accordance with law.

84. The ABCMR Denial is arbitrary and capricious because it fails to provide a reasoned explanation of its decision to deny Ms. Gubera's Request.

85. The ABCMR Denial is arbitrary and capricious because it fails to explain how the ABCMR applied the liberal consideration and review as outlined in the Hagel Guidance (which the ABCMR Denial fails to reference) and the Kurta Guidance to the facts of this case.

86. The ABCMR Denial is arbitrary and capricious because it fails to address Ms. Gubera's MST, Ms. Gubera's PTSD, the VA Rating Decision, or the ARBA Recommendation that Ms. Gubera's characterization of service be upgraded to "Honorable."

87. The ABCMR Denial is arbitrary and capricious because it fails to explain how the ABCMR gave liberal consideration to Ms. Gubera's MST, and how Ms. Gubera's MST failed to excuse or mitigate Ms. Gubera's discharge.

88. The ABCMR Denial is arbitrary and capricious because it fails to explain how the ABCMR gave liberal consideration to Ms. Gubera's PTSD resulting from MST, and how Ms. Gubera's PTSD failed to excuse or mitigate Ms. Gubera's discharge.

89. The ABCMR Denial is arbitrary and capricious because it fails to address the recognition in the Kurta guidance that Ms. Gubera's MST and Ms. Gubera's PTSD from MST inherently affected her behavior, resulting in her behaving differently than expected, which may have been the reason she did not provide a family care plan, resulting in her discharge.

90. As a result of the ABCMR's failure to provide the aforementioned explanations, it is not possible to reasonably discern a connection between the underlying facts and the ABCMR Denial; therefore, the ABCMR Denial is arbitrary and capricious.

91. The arbitrary and capricious ABCMR Denial prejudiced Ms. Gubera, as it resulted in Ms. Gubera's Request being denied by the ABCMR, her characterization of service not being upgraded, and her loss of benefits related to an Honorable characterization of service.

92. The ABCMR's many failures in addressing Ms. Gubera's Request are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus violate the APA. 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Ms. Gubera respectfully requests that this Court enter judgement in her favor and against Defendants, and grant the following relief:

(A) Hold that the ABCMR Denial was arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law;

(B) Vacate the ABCMR Denial;

(C) Remand this matter to the ABCMR for further proceedings to correct the errors identified above;

(D) Grant Ms. Gubera reasonable attorney's fees and expenses pursuant to 28 U.S.C. § 2412; and

(E)     Grant such further relief that this Court deems just and proper.

Dated: May 19, 2023

Respectfully submitted,

By: /s/ Chad B. Crowell
Tia T. Trout-Perez (DC Bar No. 990447)
Melissa S. Gainor (DC Bar No. 980411)
Chad B. Crowell (DC Bar No. 1754710)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
(202) 389-5000
ttrout-perez@kirkland.com
melissa.gainor@kirkland.com
chad.crowell@kirkland.com

Rochelle Bobroff (DC Bar No. 420892)
Abigail Reynolds (DC Bar No. 1735880)
NATIONAL VETERANS LEGAL SERVICES PROGRAM
1100 Wilson Blvd., Suite 900
Arlington, Virginia 22209
(202) 621-5686
rochelle@nvlsp.org
abigail@nvlsp.org

ATTORNEYS FOR PLAINTIFF
STEFANIE L. GUBERA